NOT DESIGNATED FOR PUBLICATION

Nos. 129,907
129,908
129,909

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of A.C., I.P., and K.C.,
Minor Children.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; JOAN M. LOWDON, judge. Submitted without oral argument. Opinion filed July 17, 2026. Affirmed.

*Chadler E. Colgan,* of Colgan Law Firm, LLC, of Kansas City, for appellant natural mother.

*Kirstyn Dvorak*, assistant county attorney, and *Todd Thompson*, county attorney, for appellee.

Before HILL, P.J., ISHERWOOD and BOLTON FLEMING, JJ.

HILL, P.J.: This is a direct appeal from a district court's termination of a mother's parental rights to three children— I.P., born in 2019, A.C., born in 2021, and K.C., born in 2022. Mother argues that the court erred when it based its unfitness to parent findings on a proffer of evidence because a proffer is not equivalent to proof by clear and convincing evidence as the law requires.

Indeed, Mother did stipulate to a finding of unfitness to parent, and the State did proffer some evidence, but that was not all that the Court relied on. The same judge presided at all of the hearings dealing with mother and her children. At the termination hearing the entire social file was admitted into evidence for the trial court to consider.

1

Our review of the record reveals no reason to reject either the court's findings or the court's termination of parental rights order. Thus, we affirm.

*Three reports of drug use, abuse, and neglect prompt State intervention.*

First, in June 2023, the Kansas Department for Children and Families received a report that Mother had left her three children unsupervised. The report alleged that an altercation with her drug dealer caused Mother to flee her home, leaving her children alone and unsupervised. Mother claimed that her drug dealer had tased her, and then tried to rape her, but she managed to escape. She ran from the home before contacting the police to report the assault.

In an interview with Mother after the incident, she allegedly had difficulty remaining still and was "hyperverbal and emotional, crying at times." Mother admitted to occasionally using methamphetamine, Xanax, and marijuana. Mother refused to complete a drug test, believing it would be used against her to take her children away.

*A second report concerning Mother's care for K.C. prompts action.*

A few weeks later, an agency case worker reported that K.C., Mother's seven-month-old child, had bruises on his head. The case worker advised that new bruises were observed upon each visit to Mother's home. Initially, Mother claimed that she dropped her phone on K.C.'s face, but later claimed that K.C., a seven-month-old, bruised his own head by falling into furniture. During an interview with the Department case worker, Mother "was hyper verbal, emotions consistently changing, and could not sit still." The case worker asked Mother to complete a drug test, but she refused claiming she had no transportation to go take the test, nor did she have anyone to watch her children.

Later, Mother agreed to a safety plan for the care of her three children while she continued using drugs. Mother admitted she would test positive for marijuana, methamphetamine, and fentanyl, if she had to take a drug test. The initial plan provided Mother with family preservation services, and other supportive services to help Mother succeed. Additionally, the plan provided that other family members would watch the children while Mother used drugs.

Meanwhile, the case worker advised Mother that she must complete drug tests to determine substance use, so that appropriate services could be provided and to determine the ongoing safety of her children. The case worker explained that if Mother missed any ordered drug tests, court involvement would be pursued. After the meeting, Mother was directed to complete a drug test.

Mother did not complete the drug test as requested. Community corrections reported that Mother twice attempted to complete the test, could not do so, and so she walked out of the facility having failed to complete the test. During her attempts to complete the test, community corrections' staff heard Mother "complaining, cursing, stomping, and hitting the wall."

*A third report alleged abuse of I.P. and that Mother continued using drugs.*

In July 2023, the Department received a third report alleging that Grandfather had sexually abused I.P., Mother's four-year-old daughter, and he allegedly hit someone in Mother's home resulting in his arrest. The report also claimed that drugs were being sold from Mother's home, with people seen coming and going throughout the night. Mother was also allegedly seen using drugs—she was seen "hitting the pipe"—and was stumbling and slurring her speech.

Later that day, Department specialist Rickey Giles followed up on the reported allegations and observed I.P. and A.C. walking in and out of the home unsupervised, near a cemented staircase with a 10-foot drop. Giles reported that the front door of the home remained open, while the front yard was littered with "trash, junk, clothing, toys, and a 2 x 6 swimming pool filled with water."

Giles approached the front door and I.P. said that her mother was not home, and that there were no adults in the home. But I.P. then said, "[M]y mommy is home but she's asleep." I.P. went to wake and retrieve Mother, who arrived several minutes later, "disheveled, very skinny, slouching, speaking slowly." Mother discussed the events which prompted the Department report, explaining that the police had been called to her home because Grandfather, "who is a drunk, punched [Mother] in the face" resulting in his arrest.

Additionally, Mother admitted that she had recently been using methamphetamine, but once again refused to complete a drug test upon request.

*The State seeks child in need of care adjudications for the three children.*

On July 11, 2023, the State petitioned the district court to deem Mother's three children as children in need of care. The State alleged that the three children were

(1) without adequate parental care, control, or subsistence and it was not due solely to the lack of the parents' financial means;

(2) without the care or control necessary for the children's physical, mental, or emotional health; and

(3) the children had been physically, mentally, or emotionally abused or neglected.

4

The State contended that reasonable efforts had been provided to prevent the removal of the children from their home, but Mother refused to follow safety plans to keep her children safe, continued to use drugs while caring for her children, refused to submit to random urinalysis tests, and failed to address her mental health needs.

All of these circumstances, the State argued, meant that an emergency existed requiring out-of-home placement in Department custody for the three children. The children were likely to sustain harm if not immediately removed from the home, remaining in the home was contrary to the children's welfare, and placement out of the home was in the best interests of the children. The State also moved for an ex parte order of protective custody.

*The three children are removed from Mother's home.*

On July 13, 2023, the court held a temporary custody hearing, ordering that the three children should be placed in Department custody. The court also ordered Mother to complete a drug test the day of the hearing and advised that visitation with her children would be contingent on two consecutive negative drug tests.

Cornerstones of Care, an agency tasked with managing the family's case, worked towards reintegration by developing case plans with Mother. The plan provided that Mother would:

- regularly participate in random drug testing;
- maintain a stable income, housing, and transportation;
- refrain from using drugs and alcohol;
- complete parenting classes;
- complete a mental health assessment and follow all recommendations;

5

- maintain frequent contact with her children;

- complete a drug and alcohol assessment and follow all recommendations for treatment; and

- obey all federal, state, and local laws.

A month later, the court admitted into evidence the Cornerstones reintegration plan and Mother's drug and alcohol screening results, and accepted the State's proffer of the Department's affidavit and the State's CINC petition. Accordingly, the court found clear and convincing evidence that A.C. and K.C. were children in need of care. As a result of that finding, the court ordered the children to remain in Department custody and that both the Department and Cornerstones would retain discretion about Mother's visitation.

*Mother failed to appear at the adjudication hearing.*

In September 2023, the district court held an adjudication and disposition hearing, in which Mother did not appear as she was in custody in the Wyandotte County Jail. Her attorney told the court that he had not been instructed to object to the State's proffer, thus the court allowed the State to proffer the factual basis for finding the children in need of care, as well as the affidavit filed by the Department in July 2023. The court then announced its findings that A.C., I.P., and K.C. were children in need of care based on clear and convincing evidence that the children were: (1) without adequate parental care, control, or subsistence and the condition was not only because of the parents' financial means; (2) that the children were without the care or control necessary for the children's physical, mental, or emotional health; and (3) the children had been physically, mentally, or emotionally abused or neglected, or sexually abused. Additionally, the court adopted Mother's proposed reintegration plan.

*Mother failed to comply with her reintegration plan, nor did she adjust her circumstances to meet the needs of her children.*

In several reports filed with the district court, Cornerstones detailed Mother's failures to comply with reintegration plans with her children and showed that she lacked the effort to change her conduct or circumstances to meet the needs of her children. Mother failed to submit regular drug tests—completing only 10 out of the 77 tests ordered. As a result, Mother was only able to visit her children for a total of five days. Mother's visitation with her children was withheld after a drug test resulted in a positive test for marijuana. After the positive test, Mother stopped completing tests and ceased communicating with Cornerstones. During the proceedings of this case, Mother had been incarcerated multiple times, further hindering any reintegration efforts.

*The State moves to terminate Mother's parental rights.*

Based on Mother's failure to comply with orders and reintegration tasks, her continued drug use, and lack of effort to change her conduct or circumstances to meet the needs of her children, the State moved for a finding that Mother was unfit and for the termination of her parental rights. The motion alleged that Mother failed to:

- Provide verification of stable income, housing, or transportation;
- Complete an additional drug and alcohol screen as requested;
- Provide verification of her completion of parenting classes;
- Provide verification of her prescriptions;
- Provide verification of her completion of a mental health assessment; and
- Complete random, timely negative drug tests.

Additionally, the State alleged that Mother had not visited her children since April 9, 2024, after she tested positive for marijuana. Since then, Mother had ceased cooperating and communicating with Cornerstones.

*Mother admits a presumption of unfitness applies.*

On November 20, 2024, at a hearing on the State's motion for the termination of Mother's parental rights, Mother appeared by zoom because she was incarcerated. As a result, the court continued the matter until Mother could be transported from the jail and be physically present for the termination hearing.

At the termination hearing held on January 16, 2025, Mother appeared in person and consulted her attorney while the court took a recess. After consulting with counsel, Mother told the court that she was stipulating that the presumption of unfitness under K.S.A. 38-2271(a)(5) applied and asked that the State proceed by proffer. Mother also asked that the court take the matter of unfitness under advisement for 45-60 days to allow Mother to make arrangements for the children to remain together. The State had not alleged a presumption of unfitness in its motion.

Mother's attorney explained that the stipulation was to the existence of facts that would give rise to the presumption, and to the applicability of that presumption. The court extensively discussed the stipulation with Mother to make sure that she understood that the presumption had not been alleged by the State and that Mother was not required to make the stipulation. The court clarified this through a discussion with Mother:

"THE COURT: And do you understand that the State's motion is requesting the Court to terminate your parental rights?

"[Mother]: Yes.

8

"THE COURT: Do you understand that the State is required to allege the find—factors of unfitness or asking the Court to make a finding of for this particular hearing?

"[Mother]: Yes.

"THE COURT: And do you understand that generally they're also required to allege any presumption that may be in place?

"[Mother]: Yes.

"THE COURT: And that they have not alleged any presumptions against you.

"[Mother]: Yes.

"THE COURT: Okay. Do you understand, though, that with the facts of this particular case, they could have?

"[Mother]: Yes.

"THE COURT: And I understand, then, that based on communications with your attorney, you are conceding that that particular presumption could have been alleged.

"[Mother]: Yes, ma'am."

Then, the court again clarified with Mother's attorney the parameters of Mother's stipulation, stating:

"And just so we're clear, I'm gonna . . . And, [Mother's attorney], again just for purposes of the record, the presumption that everyone is referring to is K.S.A. 38-2271(a)(5), specifically, quote, The *child* has been in out-of-home placement, under court [or]der for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed towards reintegration of the child into the parental home, end quote. Is that the presumption that you have discussed with your client?" (Emphasis added.)

Mother's attorney confirmed that the court correctly identified the presumption's limits, which Mother agreed to as well. The court then clarified with Mother that she understood the consequences of her stipulation:

"THE COURT: And it's my understanding that at this time, you are conceding that this presumption would apply in your cases.

"[Mother]: Yes.

9

. . . .

"THE COURT: And do you understand that if you concede to this presumption and fail to rebut that presumption, then that itself is a basis for the termination of your parental rights.

"[Mother]: Yes.

"THE COURT: Do you concede that the children have been in out-of-home placement, under court order for a cumulative total period of one year or longer, and that as a parent, you have substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed towards reintegration of the child into the parental home?

"[Mother]: Yes.

"THE COURT: And do you also concede that the Court can use that presumption in the—in future hearing if you and [Mother's attorney] are unsuccessful in accomplishing what you are attempting to accomplish?

"[Mother]: Yes."

And finally, the court confirmed that Mother was not objecting to the State's proffer, to which Mother's attorney responded that Mother was not objecting to the State's proffer of evidence. The court then allowed the State to proceed with its proffer, in which the State asked that the court "adopt all previous orders and findings" and "all previous court reports filed in this matter and the amended motion for finding of unfitness and termination of parental rights." Additionally, the State asked that the court make findings under K.S.A. 38-2269(b)(3), (b)(4), (b)(7), (b)(8), (c)(2), and (c)(3). And the State agreed with the court's clarification that the State was requesting the court take into evidence "effectively the entirety of the court files in this case, to include affidavit and agency reports that have been filed throughout the duration of this case." Once again, the court confirmed that Mother had no objection to the State's proffer, and Mother affirmed that Mother was not objecting to the proffer.

The court later identified three court reports that would be considered, which Mother stated that she had no objection to those three documents being admitted:

10

- Court report filed on January 7, 2025;
- Court addendum filed on January 6, 2025;
- Termination timeline from December 26, 2024.

Accordingly, the court took the matter under advisement for 45-60 days.

*The court finds Mother unfit, terminating her parental rights.*

In reaching its decision, the court relied on all of the findings that had been made throughout the duration of all three cases. The court also considered the affidavit filed by the Department, the contents of all of the Cornerstones of Care court reports, and other agency filings that have been made throughout the pendency of this case. The court also examined the termination timeline prepared by Cornerstones. From all of this, the court found that the evidence was clear and convincing that Mother was unfit due to the age of this case, Mother's actions, and how far from reintegration she was with her children. The court found clear and convincing evidence established that Mother's unfitness was unlikely to change in the foreseeable future. And the court found clear and convincing evidence that it was in the best interests of the children for the termination of Mother's parental rights, reasoning:

- "the age of the children when they entered into DCF custody;
- "the length of time this case has been pending;
- "the lack of involvement shown by [Mother]; and
- "the fact that the children continue to be placed together."

The court then terminated Mother's parental rights to all three of her children. Accordingly, the court ordered the children be placed in Department custody, authorizing

the Department and Cornerstones with the authority to consent to the children's adoption or other permanency options.

*Mother now claims the district court erred.*

Mother contends that the district court made a legal error by finding Mother unfit and then terminating her parental rights based solely on the State's proffer of evidence. Mother says this is an error because Mother's stipulation to the presumption of unfitness did not apply to two of her children. In response, the State argues that the real issue is whether sufficient evidence supports the district court's finding that Mother was unfit and the termination of her parental rights was proper.

*The rules we must follow are well established.*

Parents possess the fundamental constitutional right to raise and parent their own child. That bond may be severed only if clear and convincing evidence proves that the parent is unfit to parent their child. *In re Adoption of C.L.*, 308 Kan. 1268, 1279, 427 P.3d 951 (2018); see also *Santosky v. Kramer*, 455 U.S. 745, 753, 769, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 705-06, 187 P.3d 594 (2008). Before a court may terminate a parent's rights to raise and parent their child, there must be clear and convincing evidence that the parent is unfit. An unfitness and termination finding involves three parts:

1. The parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child;
2. the conduct or condition is unlikely to change in the foreseeable future; and
3. termination of parental rights is in the best interests of the child.

*In re K.W.D.*, 321 Kan. 100, 109-10, 573 P.3d 221 (2025).

At the first step of this unfitness analysis, the statute requires that the district court consider a nonexclusive list of factors. Additionally, if the child is not in the parent's physical custody, the court must also consider a separate list of factors. Any one factor alone may suffice as grounds for termination of parental rights. K.S.A. 38-2269(f); *In re K.W.D.*, 321 Kan. at 110.

Relevant here, where the State alleged several statutory factors as grounds for the termination of Mother's parental rights, a court must consider:

- the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental, or emotional needs of the child;
- physical, mental, or emotional abuse or neglect or sexual abuse of a child;
- failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;
- the lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child;
- failure to maintain regular visitation, contact, or communication with the child or with the custodian of the child; and
- failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home.

K.S.A. 38-2269(b)(3), (b)(4), (b)(7), (b)(8), (c)(2), (c)(3).

If the court finds clear and convincing evidence that the parent is unfit by conduct or condition, the court must then determine whether that conduct or condition rendering the parent unable to care properly for the child is unlikely to change in the foreseeable future. K.S.A. 38-2269(a). The "foreseeable future" is examined from the child's

perspective as children perceive time differently than adults. *In re K.W.D.*, 321 Kan. at 112-13. "Children have a right to permanency within a timeframe reasonable to them." 321 Kan. at 113. To make an unfitness finding under the second step, courts may consider the parent's past conduct as an indicator for future behavior, giving weight to actions over intentions. 321 Kan. at 112-13 (citing *In re D.G.*, 319 Kan. 446, 459, 555 P.3d 719 [2024]).

Finally, the third step, after the determination of whether a parent is unfit, requires that the court consider the best interests of the child, giving "primary consideration to the physical, mental and emotional health of the child." K.S.A. 38-2269(g)(1); *In re K.W.D.*, 321 Kan. at 115-16. Based on the discretion needed to make this determination, reviewing courts assess the district court's termination decision for an abuse of discretion. 321 Kan. at 116.

*Statutory presumptions of unfitness may apply in some cases.*

Under K.S.A. 38-2271, the court may presume a parent is unfit if one of the statutory presumptions are met. Here, the court may presume a parent is

> "unfit by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes, by clear and convincing evidence, that:
>
> . . . .
>
> "(5) the child has been in out-of-home placement, under court order for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home." K.S.A. 38-2271(a)(5).

14

*Appellate courts review a termination of parental rights to see if clear and convincing evidence supports the court's findings of unfitness.*

Appellate courts review the termination of parental rights to determine whether, reviewing all the evidence in a light most favorable to the State, the district court's findings were supported by clear and convincing evidence. "Appellate courts do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020), *cert. denied* 141 S. Ct. 1464 (2021).

*Clear and convincing evidence supports the court's termination holding.*

Mother argues that the district court's decision to terminate her parental rights was erroneously based on the State's proffer alone and based on her stipulation which was erroneously accepted and considered. The record shows that the court relied on sufficient evidence to make its findings and decision.

In reaching its decision, the district court relied on the Department's petition and affidavit, all of the Cornerstones court reports, attachments, and addendums, as well as the amended motion to terminate Mother's parental rights.

Mother argues that the court relied solely on the State's proffer of evidence, citing *In re A.K.*, 320 Kan. 805, 572 P.3d 763 (2025), for the proposition that a proffer is not evidence and may not exclusively form the basis for an unfitness finding. But a proffer of evidence is simply an oral recitation of what the evidence will be if the matter proceeded to trial or an evidentiary hearing. *In re A.K.*, 320 Kan. at 813. While the State may have used the term "proffer," in this context, the State's "proffer" is better characterized as a request that the court take judicial notice of documents in the case file. The court thus did not err as its findings were based on sufficient evidence beyond a proffer of evidence.

*The court properly accepted and considered Mother's stipulation to the presumption of unfitness.*

At the termination hearing in January 2025, Mother stipulated to the presumption that she was unfit under K.S.A. 38-2271(a)(5). That provision provides that a parent is unfit if their child has been in an out-of-home placement for more than one year and the parent "substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home." K.S.A. 38-2271(a)(5).

Through an extensive discussion with the court, Mother confirmed her understanding to the stipulation, the facts supporting the presumption, that the stipulation may be used against her in the future, and that she was not required to make the stipulation as it was not alleged in the State's motion. The court then took the matter under advisement, allowing Mother to benefit from her stipulation and the court's delay in finding her unfit.

At the second termination hearing, the court acknowledged Mother's stipulation but clarified that it would be relying primarily on other evidence to find that Mother was unfit. Accordingly, the court found clear and convincing evidence that Mother was unfit under K.S.A. 38-2269(b)(3), (b)(4), (b)(7), (b)(8), (c)(2), and (c)(3). The court reasoned that its decision was based on the age of this case, Mother's actions, and how far away Mother was from reintegration with her children. The court then found clear and convincing evidence that Mother's unfitness was unlikely to change in the foreseeable future.

Finally, the court found that terminating Mother's parental rights was in the best interests of her children based on the children's ages when they entered Department custody; the length of time the case had been pending; the lack of involvement shown by

16

Mother; and the fact that the children continue to be placed together. The court also found Mother's actions showed a lack of effort to amend her ways and that Mother was unlikely to make significant progress towards reintegration in the near future.

*The district court did not err by terminating Mother's parental rights.*

The district court's findings were supported by clear and convincing evidence that Mother was unfit, and termination of her parental rights was not erroneous. The evidence shows that Mother failed to comply with most orders and tasks aimed at reintegrating her with her three children. We note that of the 609 days since the children were placed in Department custody, Mother spent 5 of those days visiting her children. Mother repeatedly failed to submit regular drug tests; failed to maintain regular visitation or communication with her young children; failed to maintain a stable income, employment, housing, or transportation; and generally demonstrated a lack of effort to adjust her circumstance, conduct, or conditions to meet her children's needs. As a result, her three young children spent a substantial span of time without having any contact with their mother, thus jeopardizing their bond.

Based on the evidence, the district court properly found Mother unfit by reason of conduct or condition, rendering her unable to care properly for her children, and that Mother's conduct or condition was unlikely to change in the foreseeable future. Further, the court's finding that termination of Mother's parental rights was in the best interests of the children is supported by substantial competent evidence. In addition to the evidence already cited previously, the length of time that the case was pending also supported this finding. The three children had been out of Mother's home for 20 months.

Affirmed.